**Kevin Aron CONNER Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 49S00–9207–PD–00591.**

Supreme Court of Indiana.

May 25, 1999.

**1244**

Susan K. Carpenter, Public Defender of Indiana, Thomas C. Hinesley, Kathleen Littell–Cleary, Deputy Public Defenders, Indianapolis, Indiana, Attorneys for Appellant.

Pamela Carter, Attorney General of Indiana, Preston W. Black, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, J.

·The defendant-appellant, Kevin Conner, appeals the denial of his petition for post-conviction relief. On October 7, 1988, he was convicted of the January 26, 1988, murders of Steven Wentland, Tony Moore, and Bruce Voge at Indianapolis. The jury recommended the death penalty for the murders of Moore and Voge. The trial court ordered the death penalty for these murders and sentenced the defendant to sixty years imprisonment for the murder of Wentland. We affirmed in *Conner v. State,* 580 N.E.2d 214 (Ind.1991), *cert. denied,* 503 U.S. 946, 112 S.Ct. 1501, 117 L.Ed.2d 640 (1992). The defendant then sought post-conviction relief. Upon the post-conviction court's denial of post-conviction relief, the defendant instituted this appeal.

The defendant claims thirteen errors, which we regroup into ten topics: (1) ex parte communication to the jury; (2) non-disclosure of exculpatory evidence; (3) jury instructions; (4) admission of confession; (5) assistance of trial and appellate counsel; (6) mental health evaluations; (7) constitutionality of Indiana's death penalty statute; (8) exclusion of evidence at the post-conviction hearing; (9) cumulative effect of claimed errors as violation of due process; and (10) propriety of the death sentence.

**Preliminary Considerations**

■■■ Post-conviction proceedings do not afford defendants the opportunity for a "super-appeal." *Coleman v. State,* 703 N.E.2d 1022, 1027 (Ind.1998) (citing *Bailey v. State,* 472 N.E.2d 1260, 1263 (Ind.1985); *Langley v. State,* 256 Ind. 199, 210, 267 N.E.2d 538, 544 (1971)). Rather, post-conviction proceedings provide defendants the opportunity to raise issues that were not known at the time of the original trial or that were not available to the defendant on direct appeal. *Lowery v. State,* 640 N.E.2d 1031, 1036 (Ind.1994) ("Post-conviction actions are special, quasi-civil remedies whereby a party can present an error which, for various reasons, was not available or known at the time of the original trial or appeal."), *cert. denied,* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). Thus, they do not substitute for direct appeals but provide a narrow remedy for subsequent collateral challenges to convictions. *Coleman,* 703 N.E.2d at 1027 (citing *Weatherford v. State,* 619 N.E.2d 915, 916–17 (Ind.1993)). As a general rule, when this Court decides an issue on direct appeal, the doctrine of res judicata applies, thereby precluding its review in post-conviction proceedings. *Lowery,* 640 N.E.2d at 1037. Issues that were available, but not presented, on direct appeal are forfeited on post-conviction review. *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind.1995); *Lowery,* 640 N.E.2d at 1036–37. *But cf. Woods v. State,* 701 N.E.2d 1208 (Ind.1998) (regarding claims of ineffective assistance of trial counsel). The petitioner has the burden of establishing his grounds for post-conviction relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5).

■■■ The standard of review in appeals from ·post-conviction negative judgments is well-established. A party appealing from such a negative judgment must establish that the evidence is without conflict and, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. *Spranger,* 650 N.E.2d at

1119. The reviewing court accepts the trial court's findings of fact unless "clearly erroneous," Ind. Trial Rule 52(A), but does not defer to the trial court's conclusions of law. *State v. Van Cleave*, 674 N.E.2d 1293, 1295–96 (Ind.1996), *reh'g granted in part*, 681 N.E.2d 181 (Ind.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998). The reviewing court examines only the probative evidence and reasonable inferences that support the post-conviction court's determination and does not reweigh the evidence or judge the credibility of the witnesses. *Butler v. State*, 658 N.E.2d 72, 75 (Ind.1995); *Lowery*, 640 N.E.2d at 1037.

## 1. Ex Parte Communication to the Jury

The defendant argues that the post-conviction court erred regarding his claim that a bailiff improperly communicated to the jury during deliberations. The post-conviction court concluded that "no improper communication took place between the jury and any member of the court staff during deliberations" and that "there is no reason to conclude that normal court practices regarding juror communication would not have been followed in this case." P.C.R. Record at 325.[1]

■ The defendant's claim does not concern the content of the alleged communication, but rather the fact that it transpired outside the presence of, and without notice to, him or his counsel. Even though most of the jurors called at the post-conviction hearing testified that the communication occurred during the deliberation, one juror testified that it occurred after deliberation. The post-conviction court specifically found that this juror was the most sure of the timing. Furthermore, two bailiffs testified that they follow a standard procedure for jury questions, which includes having the jury submit the question in writing and then putting the written question in the file. In this case, the bailiffs did not recall the occurrence of such procedure and thus concluded that no communication took place. Applying our standard of review in an appeal from a negative

judgment in post-conviction proceedings, we determine that the evidence does not lead unmistakably and unerringly to a conclusion contrary to the post-conviction court's decision.

## 2. Non-disclosure of Exculpatory Evidence

The defendant claims that the prosecution failed to disclose the April 7, 1988, report prepared by Dr. Paul Frederickson regarding psychological testing that he performed on the defendant. The defendant contends that trial counsel did not know that such testing had been requested or performed or that this report was prepared. The post-conviction court found that "[t]rial counsel indicated that they had been unaware of Dr. Frederickson's testing and neither could recall ever seeing Dr. Frederickson's report." P.C.R. Record at 310. The defendant maintains that this report was material because it included the results of psychological testing performed on the defendant, revealed some cognitive impairment, and related to the defendant's mental health, and also because trial counsel, with the benefit of this report, would have sought additional mental health expert opinion. The State responds that the defendant's argument should be rejected because the defendant forfeited this issue by not raising it during trial or on direct appeal and failed to demonstrate that the prosecutor withheld the report and that the report was favorable to the defendant and material to his guilt.

■ Regarding the suppression of exculpatory evidence, the U.S. Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963). To prevail on a claim that the prosecution failed to disclose exculpatory evidence, a defendant must establish: (1) that the prosecution suppressed

---

1. In order to distinguish between the two records filed with this Court, the record of post-conviction proceedings will be referred to as "P.C.R. Record," and the record of proceedings prior to the post-conviction proceedings will be referred to as "Record."

evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *Minnick v. State,* 698 N.E.2d 745, 755 (1998) (citing *United States v. Bagley,* 473 U.S. 667, 674, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481, 489 (1985); *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218). A reviewing court will find that the prosecution should have disclosed evidence when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494. The Seventh Circuit Court of Appeals has consistently emphasized that the State will not be found to have suppressed material information if that information was available to a defendant through the exercise of reasonable diligence. *United States v. Morris,* 80 F.3d 1151, 1170 (7th Cir.1996), *cert. denied,* 519 U.S. 868, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996).

■ The defendant does not claim that this evidence was discovered after the direct appeal. A review of the record demonstrates that the information was available to the defendant through the exercise of reasonable diligence and, thus, that this claim was in fact available to the defendant upon direct appeal. Defense counsel learned of Dr. Frederickson and his testing during the competency hearing held on May 4, 1988, a full five months before the trial, which began on October 4, 1988. On cross-examination by the State, Dr. Ronald H. Hull, one of the court-ordered psychiatrists, testified that, in addition to his examination, "[a] series of psychological test[s was] done by an—Dr. Paul Frederickson, a clinical psychologist [which] included intelligence testing and what we call projective test, such as the Rorschach." Record at 300. Dr. Hull further testified that the results of this series of examinations by Dr. Frederickson were made available to Dr. Hull before he rendered his opinion in a letter on March 21, 1988. Dr. Dwight W. Schuster, the other court-ordered psychiatrist who examined the defendant, apparently arranged for Dr. Frederickson to perform these tests. The results of these tests are reflected in Dr. Schuster's letter to Judge Tranberg, dated April 18, 1988. While the letter does not specifically mention Dr. Frederickson, it does mention that Dr. Schuster's examination "was supplemented by ... a report of detailed psychological tests which I had requested on [the defendant]," outlines specific results, and even employs language almost verbatim from Dr. Frederickson's report. Record at 69.

Considering these portions of the record together, we conclude that the defendant was not unaware of the psychological testing performed by Dr. Frederickson; rather, this information was available to the defendant through the exercise of reasonable diligence. Because the defendant failed to raise this issue on direct appeal, the defendant has forfeited this claim in this appeal.

### 3. Jury Instructions

■ The defendant claims that the trial court erred when it gave the jury certain erroneous instructions and refused to give other instructions. With regard to guilt phase preliminary instruction No. 11 on reasonable doubt and the presumption of innocence, the defendant claims fundamental error. The defendant did not address these alleged errors in his direct appeal. While claims that were available, but not presented, on direct appeal are generally forfeited in post-conviction proceedings, forfeiture may not apply when the claimed error is fundamental. *Canaan v. State,* 683 N.E.2d 227, 235 n. 6 (Ind.1997); *Bailey,* 472 N.E.2d at 1263. We have emphasized that, to qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Barany v. State,* 658 N.E.2d 60, 64 (Ind.1995). Our post-conviction fundamental error standard requires the defendant to persuade the court, by a preponderance of the evidence, that a violation of basic principles of law caused the defendant's conviction or sentence to be invalid. *Rouster v. State,* 705 N.E.2d 999, 1008 n. 8 (Ind.1999).

■ The defendant contends that guilt phase preliminary instruction No. 11, which stated that "[a] reasonable doubt, as the words imply, is such a doubt as may reasonably arise from the evidence, or from the lack of evidence, or from a conflict in the

evidence, on or concerning a given fact or issue," record at 179, implies to the jury that the presumption of innocence does not remain with the defendant throughout the trial. Guilt phase preliminary instruction No. 12, which immediately followed, clearly stated that the presumption of innocence "continues throughout the trial, step by step." Record at 180. We do not consider instructions in isolation or as single units; rather, we read instructions together and construe them as a whole. *Hurt v. State*, 570 N.E.2d 16, 18 (Ind.1991); *Kirland v. State*, 43 Ind. 146, 154 (1873). Guilt phase preliminary instruction No. 11, read with the other instructions, does not erroneously inform the jury regarding the presumption of innocence remaining with the defendant throughout the trial.

■ The defendant also contends that, because guilt phase preliminary instruction No. 11 and final instruction No. 43 stated that, if a reasonable doubt is present, the defendant *should* be acquitted, rather than *must* be acquitted, the instructions erroneously failed to mandate that the jury acquit if it were to find a reasonable doubt.[2] Guilt phase final instruction No. 21, however, stated that, if a reasonable doubt exists, "it would be your *duty* to acquit him even if you should believe from the evidence, that he has been shown to be guilty of wrong doing." Record at 197 (emphasis added). Thus, the jury was clearly instructed to acquit in the presence of reasonable doubt.

### 4. Admission of Confession

The defendant challenges the post-conviction court's rejection of his claim that his confession was erroneously admitted by the trial court. The defendant has alleged that his confession was involuntary and unreliable, and thus improperly admitted. The defendant continues to argue that his confession was involuntary because the police detectives provided legal advice and "ultimately manipulated a confession from a suspect with mental disorders." Brief of Petitioner–Appellant at 85. The defendant has also argued that the confession is unreliable because many of the assertions in the confession "simply do not square with the established facts." Brief of Petitioner–Appellant at 85. The post-conviction court considered this claim and entered findings of fact and conclusions of law. The post-conviction court concluded that the defendant's confession was voluntary, reliable, and not the product of undue coercion or misconduct, and therefore was properly admitted.

■ On direct appeal, the defendant also challenged the admission of his confession, arguing that the police continued questioning him after he requested an attorney. We found no error in the trial court's admission of the defendant's videotaped confession, holding that the record contained evidence of probative value supporting the court's ruling. *Conner*, 580 N.E.2d at 219. We have noted that, despite claims of res judicata, we may revisit a prior decision, but only in extraordinary circumstances such as where the initial decision was clearly erroneous and would work manifest injustice. *Minnick*, 698 N.E.2d at 760 (citing *Arthur v. State*, 663 N.E.2d 529, 531 (Ind.1996)).

■ The post-conviction court, however, considered and rejected this claim on its merits. We elect to review this determination and conclude that the defendant has not established that the evidence is without conflict and leads unmistakably and unerringly to a conclusion contrary to the post-conviction court's decision. Before he was questioned and gave his videotaped statement, the defendant was advised of his constitutional rights multiple times and signed multiple written waivers of his rights. The defendant was calm when he gave the taped statement, and he was provided with food, soft drinks, and cigarettes at his request. The defendant affirmatively expressed his desire to speak with the detectives, testified that he was not confused or "under pressure," and did not request to speak with an attorney. There exists evidence in the record that the defendant did not suffer from a mental disorder. Evidence also demonstrates that the detectives used the criminal code book not to

---

**2.** The trial court included guilt phase preliminary instructions Nos. 1 to 19 in its final instructions, which included guilt phase final instructions Nos. 20 to 45.

manipulate the defendant into giving a statement or to provide legal advice, but rather to answer questions asked by the defendant and to explain the charges against the defendant, the differences among murder, voluntary manslaughter, and involuntary manslaughter charges, and the relevance of sudden heat. While the police detectives may have had somewhat differing opinions as to the sequence of events, the evidence in the record does not lead unerringly to a conclusion contrary to the trial court's decision. Even though some of the facts in the defendant's confession may be inconsistent with facts established at trial, these inconsistencies do not render the confession unreliable or involuntary. The principal facts provided in the defendant's confession are corroborated by other facts. As to the post-conviction court's rejection of the defendant's claim that his confession was erroneously admitted, we find no error. The court's decision is not clearly erroneous.

### 5. Assistance of Trial and Appellate Counsel

The defendant contends that the post-conviction court erred in determining that the defendant failed to meet his burden of proof on his claim of ineffective assistance of trial and appellate counsel. The defendant has alleged that his Sixth Amendment right to counsel was violated because his trial counsel failed adequately to develop and present an explanation of the crimes and available defenses in the guilt, penalty, and sentencing phases and because his appellate counsel's assistance was ineffective. In addition, he claims that systemic defects in the trial court's indigent defense program precluded him from receiving effective legal representation.

In order to prevail on his claim of ineffective assistance of trial and appellate counsel, the defendant had to demonstrate to the post-conviction court that "(1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that because of counsel's errors the result of the proceeding is unreliable or unfair." *Harrison v. State,* 707 N.E.2d 767,

777 (Ind.1999) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), and *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180, 189 (1993)). For claims of ineffective assistance of counsel, the same standard of review applies whether trial or appellate counsel is involved. *Lowery,* 640 N.E.2d at 1048.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Bieghler v. State,* 690 N.E.2d 188, 199 (Ind.1997); *Davis v. State,* 598 N.E.2d 1041, 1051 (Ind. 1992), *cert. denied,* 510 U.S. 948, 114 S.Ct. 392, 126 L.Ed.2d 340 (1993); *Ingram v. State,* 508 N.E.2d 805, 808 (Ind.1987). However, in order to make a reasonable tactical decision, counsel must have adequately investigated the client's case because "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

### a. Trial Counsel During Guilt, Penalty, and Sentencing Phases

The defendant challenges the post-conviction court's rejection of his claim that he was denied a fair trial because his trial counsel provided ineffective assistance at the guilt, penalty, and sentencing phases, and thereby failed to subject the State's case to meaningful adversarial testing. The post-conviction court concluded that the defendant was not

denied the effective assistance of trial counsel at the guilt, penalty, and sentencing phases:

> The evidence demonstrated that trial counsels' actions did not fall below the prevailing standards in the legal community at that time. The evidence demonstrated that trial counsel filed many pleadings on behalf of [the defendant], conducted a reasonable investigation into [the defendant's] family, social and medical background, and presented an adequate defense on behalf of [the defendant] at the guilt phase, penalty phase, and sentencing hearing during [the defendant's] trial. Certainly, in hindsight, trial counsel could have possibly expanded on areas of [the defendant's] defense but, based upon the evidence presented, failure to do so was not ineffective assistance of counsel.

P.C.R. Record at 324. Thus, the post-conviction court concluded that the defendant failed to carry his burden of demonstrating deficient performance and prejudice.

### (1). Assistance of Counsel at the Guilt Phase

In challenging the assistance of his two trial counsel at the guilt phase, the defendant argues that trial counsel failed to develop or present any available defense. The defendant specifically alleges the following failures by counsel: (1) confusion over their respective roles; (2) belated, misguided, and inadequate investigation; (3) belated, random, and confused motion practice; (4) failure to appreciate the degree to which the defendant's mental health was at issue; (5) failure to develop a guilt phase theory; (6) failure to investigate and present available defenses, including voluntary manslaughter as to Counts I and II, factual disputes regarding Count III, and intoxication; and (7) failure to object to an allegedly prejudicial photographic array and in-court identification and the State's closing argument. The defendant also argues that the cumulative effect of these deficiencies deprived him of a fair trial.

The record contains evidence that, at the time of his 1988 trial, one attorney had over ten years of experience in his criminal law practice. This same attorney had been involved in capital cases and had received training in capital defense. The other attorney had prosecuted murder cases and had either prosecuted or defended about twenty Class A and B felony cases.

In preparing and presenting the defendant's defense, the two attorneys both undertook substantial work and consulted with each other regarding the case. Although one attorney was designated the lead attorney, the other attorney actually performed the bulk of the work on the case and assumed the lead role prior to trial. Defense counsel consulted with other attorneys, including counsel from the Indiana Public Defender's office. Defense counsel also had access to resources available from the Indiana Public Defender's office. One of the counsel testified that he believed he utilized all resources of which he was aware, and the other testified that he believed he had pursued every aspect of the defendant's case of which he was aware. Defense counsel arranged to have the defendant's mental condition examined, requested and received funds to hire an investigator, and hired an investigator who investigated the case. Both attorneys timely filed numerous relevant motions, including a motion to suppress the defendant's confession, one of the key pieces of evidence against him, and a motion to obtain funds for a psychiatrist, in addition to the two appointed by the court, to evaluate the defendant. The defendant has not identified any motion that was denied solely because it was not filed in a timely manner.

Several weeks before trial, defense counsel indicated to the trial court that the defense would be ready for trial on October 3, 1988, and did not consider seeking a continuance because more time was needed for investigation. Defense counsel at trial challenged the State to prove the elements of the crimes alleged and attempted to create reasonable doubt, thereby seeking acquittal upon the failure of proof. Furthermore, defense counsel subjected the State's witnesses to cross-examination and objected to the admission of evidence at trial.

Many of the alleged failings of defense counsel relate to strategic decisions that counsel would have made. Defense counsel

could have reasonably decided not to include the defendant's mental health as a part of its defense, especially considering the fact that several of the psychiatric or mental health examinations performed on the defendant failed to provide substantive evidence suggesting that the defendant's mental health was a serious issue or any evidence that was favorable to the defendant's case. The results of at least three mental health examinations did not suggest that the defendant suffered from serious mental disability or disease. Counsel's strategic decision was reasonable.

 Defense counsel could have reasonably determined not to present certain potential defenses because they adopted an alternative strategy. As to Counts I and II regarding the murders of Steven Wentland and Tony Moore, defense counsel elected to challenge the State to prove fully its principal charges, seeking acquittal upon the State's failure to prove its case beyond a reasonable doubt, instead of presenting an affirmative defense or arguing for a lesser-included offense in the guilt phase. This strategic decision enabled counsel to concentrate on seeking potential inconsistencies in damaging witness testimony. As to the defendant's allegation that trial counsel failed to present factual disputes regarding Count III which involved the murder of Bruce Voge, we note that trial counsel filed a motion to suppress the defendant's confession, cross-examined State's witnesses, suggested during closing argument that another person was responsible for Voge's death, and identified discrepancies between the testimony offered by witnesses and the version of events provided by the defendant in his confession. Regarding the defendant's contention that defense counsel should have investigated and presented available evidence supporting an intoxication defense, counsel was not outside their bounds of discretion in deciding not to invoke an intoxication defense when, under the facts of this case and the law of Indiana, this defense was not likely to be effective.[3] *See Montgomery v. State,* 521 N.E.2d 1306, 1309 (Ind.1988). Such strategic decisions are reasonable and legitimate.

 By choosing not to object to the allegedly prejudicial photographic array and in-court identification and the State's closing argument, defense counsel avoided drawing attention to testimony or argument unfavorable to the defendant. This was a legitimate strategy.

Applying our standard of review for appeals from negative judgments in post-conviction proceedings, we conclude that, as to the claims of deficient trial strategy and tactics, the evidence is not without conflict and does not, as a whole, lead unmistakably and unerringly to a result opposite that of the post-conviction court.

The defendant also contends that, even if the individual failings of trial counsel do not constitute ineffective assistance, their cumulative effect does. The post-conviction court did not enter any findings or conclusions regarding this claim. The defendant cites to our holding in *Williams v. State* in which we reversed a conviction based upon an accumulation of defense attorney errors, finding that "where those mistakes and oversights mount to do substantial damage to the defense, such a claim must prevail." 508 N.E.2d 1264, 1269 (Ind.1987). In *Williams,* counsel for the defendant clearly provided merely perfunctory representation—counsel failed to attend hearings, indicated to the trial court that he was unprepared to represent the defendant, attempted to withdraw on multiple occasions, including the first day of trial, did no additional investigation or preparation during the five days between the denial of a motion to withdraw and trial, and did not interview any of the State's witnesses prior to trial. His only contact with the alibi wit-

---

**3.** The voluntary intoxication defense is only available when the evidence shows that a defendant's intoxication was so great as to prevent forming the requisite intent. *Legue v. State,* 688 N.E.2d 408, 410 (Ind.1997) (citing *Gibson v. State,* 516 N.E.2d 31, 33 (Ind.1987)). As we have stated, " 'a defendant should not be relieved of responsibility when he was able to devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill.' " *Legue,* 688 N.E.2d at 410 (quoting *Miller v. State,* 541 N.E.2d 260, 263 (Ind.1989)). The evidence before the trier of fact demonstrated that the defendant was able to form the intent necessary to commit the crime of murder. *See Early v. State,* 482 N.E.2d 256, 258 (Ind.1985).

nesses was by telephone, failing also to subpoena them, and he did not request funds to depose them until the morning of the trial. Under these unusual facts, this Court determined that "[t]he undisputed facts, standing alone, clearly establish that Williams received ineffective assistance," *id.* at 1267, and that, "[i]n addition to revealing substandard representation, the record graphically portrays a breakdown in the adversarial process which casts substantial doubt on the reliability of Williams' trial, as required by *Strickland,*" *id.* at 1268.

■■■ Such an unusual situation does not exist in this case. Here the two defense attorneys fully represented the defendant throughout the trial. Defense counsel had undertaken substantial work in investigating and preparing for trial. No breakdown in the adversarial process occurred that would cast substantial doubt on the reliability of the defendant's trial.

### (2). *Assistance of Counsel at the Penalty and Sentencing Phases*

In challenging the assistance of counsel at the penalty and sentencing phases, the defendant contends that trial counsel failed to conduct a reasonable penalty phase investigation, to provide the jury with any meaningful explanation of the crimes, and to present available mitigating evidence of the defendant's childhood traumas, mental disabilities, and intoxication.

■■■ The record indicates that in the penalty and sentencing phases defense counsel's strategy was to humanize the defendant, an appropriate strategic decision. Defense counsel presented opening and closing arguments and testimony from several witnesses in order to present evidence of the defendant's background, including alcohol, drug, and family problems, his relationships, his good qualities, his employment history, and his relatively minor criminal history. Defense counsel also conducted cross-examination, objected to the admission of evidence, and identified mitigating circumstances. Defense counsel requested funds and identified corrections for the pre-sentence report.

We conclude that the evidence does not lead unerringly and unmistakably to a result contrary to that reached by the post-conviction court in rejecting the defendant's claim of ineffective assistance of counsel at the penalty and sentencing stages.

■■■ The defendant also contends that trial counsel provided ineffective assistance when they argued that the death penalty should not be imposed so that the defendant could give back to society. During part of their summation in the penalty phase, the defense counsel argued that the defendant's life should be preserved so that experts could study him scientifically to discover how he worked and why people commit such crimes.

The defendant cites two federal circuit court cases for the proposition that asking the jury to spare the defendant's life in order to study him constitutes ineffective assistance. *Wade v. Calderon,* 29 F.3d 1312, 1324 (9th Cir.1994), *cert. denied,* 513 U.S. 1120, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995); *Waters v. Zant,* 979 F.2d 1473, 1497 (11th Cir. 1992), *vacated in part sub nom. Waters v. Thomas,* 46 F.3d 1506 (11th Cir.1995), *cert. denied sub nom Waters v. Thomas,* 516 U.S. 856, 116 S.Ct. 160, 133 L.Ed.2d 103. Neither of these opinions supports the defendant's argument.[4] Arguing that the defendant's life

---

4. We do not find *Wade* applicable. In *Wade,* the court found multiple factors that together made counsel ineffective during the penalty phase, among them counsel's closing argument. 29 F.3d at 1323–25. The *Wade* court's holding regarding the ineffective assistance of counsel did not rely on the fact that counsel argued that the jury should spare the defendant's life as a "guinea pig." Rather, the *Wade* court relied on the fact that defense counsel in his closing argument relieved the jury of any doubt or anguish it might experience in deciding to sentence the defendant to death and that counsel argued that executing the defendant would be an outcome favorable to the defendant. Essentially, defense counsel gave up and intimated that executing the defendant would end the defendant's misery. *Id.* at 1324. The court concluded that there existed no tactical reason to make this argument to the jury. *Id.*

We also find that *Waters v. Zant,* 11 F.3d 139 (11th Cir.1993), does not provide support for the defendant's contention. That decision was vacated and reheard en banc. *See Waters v. Thomas,* 46 F.3d 1506 (11th Cir.1995). Upon rehearing en banc, the court concluded that arguing that the defendant's life should be spared in order to provide opportunities for study was not

should be spared in order to provide opportunities for study does not necessarily constitute ineffective assistance. Rather, such an argument could be a reasonable strategy in making the best argument in a hard case.

We conclude that the evidence does not lead unerringly and unmistakably to a conclusion contrary to the decision of the post-conviction court that the defendant's trial counsel did not provide ineffective assistance. Thus, the post-conviction court did not err in rejecting the defendant's claim that trial counsel provided ineffective assistance at the trial, penalty, and sentencing phases.

### b. Appellate Counsel

The defendant contends that the post-conviction court erred in rejecting his claim that his appellate counsel's performance was perfunctory and that he received ineffective assistance of appellate counsel on direct appeal, alleging several deficiencies in his appellate counsel's performance and that the cumulative effect of appellate counsel's deficiencies denied him a meaningful appeal. The post-conviction court concluded that the defendant was not denied the effective assistance of appellate counsel and that his appellate counsel's "representation was in accord with prevailing standards in the legal community at that time." P.C.R. Record at 325. Thus, the post-conviction court determined that the defendant failed to meet his burden of proof, and the defendant now challenges a negative post-conviction judgment. In this appeal from that judgment, the defendant fails to argue that the evidence is without conflict and, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision.

■ A defendant alleging the ineffective assistance of appellate counsel on direct appeal bears a rigorous burden. Because the decision regarding what issues to raise and what arguments to make is " 'one of the most important strategic decisions to be made by appellate counsel,' " ineffectiveness is very rarely found. *Bieghler*, 690 N.E.2d at 193 (quoting Lissa Griffin, *The Right to Effective Assistance of Appellate Counsel*, 97 W. VA. L.REV. 1, 26 (1994)). "Accordingly, when assessing these types of ineffectiveness claims, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." *Bieghler*, 690 N.E.2d at 194.

■ The defendant claims that appellate counsel provided ineffective assistance by failing to raise a claim of ineffective assistance of trial counsel on direct appeal. This Court has recently clarified the law regarding claims of ineffective assistance of counsel. *See Woods*, 701 N.E.2d at 1211–20. In *Woods*, we held that "a Sixth Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in post-conviction proceedings. However, if ineffective assistance of trial counsel is raised on direct appeal by a *Davis*[5] petition or otherwise, the issue will be foreclosed from collateral review." *Id.* at 1220. Thus, because appellate counsel is not required to raise this claim on direct appeal, appellate counsel's failure to do so was not deficient representation.

■ The defendant urges that appellate counsel failed to challenge what the defendant now alleges is an improper sentence.[6] The defendant contends that his appellate counsel's argument in the brief regarding this issue covered only two pages and that counsel failed to cite anything in the record to show the State's failure to prove the existence of an aggravating circumstance or to demonstrate the existence of mitigating circumstances disregarded by the trial court. To the contrary, the appellate brief discussed these issues and incorporated, from another portion of the brief, argument on a related

---

ineffective assistance, and the court noted that this argument had in fact been approved by other courts. *Thomas*, 46 F.3d at 1520–23. Rather than being an unreasonable argument, the court concluded that it could be a reasonable strategy in making the best argument in a hard case. *Id.* at 1522–23. Thus, *Waters* is antithetical to the proposition for which the defendant cites it.

5. *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (1977) (recognizing a procedure that allows a defendant to suspend the direct appeal to pursue an immediate petition for post-conviction relief).

6. For a discussion of the alleged impropriety of the sentence, see *infra* Issue 10.

issue and argued that the death sentence was invalid, that the prosecution failed to prove the existence of at least one aggravating factor, and that the trial court failed to consider several mitigating factors identified in the brief. On direct appeal, this Court carefully considered these arguments and addressed them on their merits. *See Conner,* 580 N.E.2d at 221. The defendant has failed to meet his burden of showing that the evidence leads unmistakably and unerringly to a conclusion opposite that of the post-conviction court.

■ The defendant asserts that appellate counsel failed to include trial counsel's arguments at trial, thereby failing to discover potential claims of error relating to those arguments and precluding their review on direct appeal. Under the law at that time, a motion to correct error controlled the issues available on direct appeal. *Ward v. State,* 519 N.E.2d 561, 562 (Ind.1988). At the relevant time, Indiana Appellate Rule 7.2(B) provided in part: "The appellant shall designate only those parts of the record to be transmitted to the court on appeal.... Neither party shall request parts of the record or a transcript of the proceedings which are not needed for the issues to be asserted upon the appeal...."[7]

The defendant's belated motion to correct errors, filed by trial counsel, controlled the issues available on direct appeal, and this motion alleged no errors that would have required appellate counsel to include trial counsel's arguments. Nothing in the record either suggests that a record of trial counsel's arguments were necessary to the appeal or indicates that appellate counsel deemed such a record to be necessary.

7. While Indiana Appellate Rule 7.2(B) has since been amended, these specific provisions have remained unchanged.

8. Twenty-three of the twenty-four issues were considered on their merits. The defendant intimates that the fact that a "succinct" opinion "span[ning] a mere six pages in the North Eastern Reporter" disposed of this case on direct appeal demonstrates that appellate counsel was ineffective. Brief of Petitioner–Appellant at 99 & n. 73. This suggestion is patently unsound. The length of an opinion has little to do with the respective merits of issues raised on appeal but

■ The defendant claims that appellate counsel was ineffective for failing to present cogent arguments, for failing to support the claims with proper citation to relevant authority and the record, and for raising irrelevant issues. On direct appeal, appellate counsel's seventy-eight page brief challenged the defendant's trial, conviction, and sentencing in fifteen enumerated claims, altogether presenting twenty-four issues, which we addressed.[8] *See Conner,* 580 N.E.2d at 216–21. Additionally, appellate counsel petitioned for a writ of certiorari to the U.S. Supreme Court and for a rehearing when that Court denied the writ.

■ The defendant also contends that appellate counsel was ineffective for deciding not to file a reply brief or a petition for rehearing. Appellate counsel explained that he "did review ... the [State's] Brief at some length and looked at the various allegations and things submitted" and that he decided not to file a reply brief because he considered the State's brief "very cursory and [he] thought we had covered our issues in our Appellant's Brief." P.C.R. Record at 875. Appellate counsel added that he "thought our position was presented in our brief the way we wanted to present it" and that the State's brief "was very sketchy for the most part." P.C.R. Record at 875. Regarding his decision not to petition for rehearing before the Indiana Supreme Court, appellate counsel testified that he "reviewed [the Indiana Supreme Court opinion on direct appeal] and thought about it and considered it, but it just, you know, I knew we wanted to file something in the U.S. Supreme court so I thought the issues had been considered and I didn't know that we would change any minds necessarily." P.C.R. Record at 876. The post-

may more accurately reflect the complexity of the legal issues or the procedural posture in which cases come before us. Further, the defendant argues that the statement of facts in the direct appellate brief was "devoid of even a hint of advocacy." *Id.* at 99. This point is not well-taken. As our Court of Appeals noted in *Chesterfield Management, Inc. v. Cook,* 655 N.E.2d 98, 100–01 (Ind.Ct.App.1995), a biased statement of the facts can in fact hamper advocacy, as it renders them unreliable to the court in deciding the issues.

conviction court was not clearly erroneous in failing to find this to be deficient strategy.

The defendant claims that appellate counsel's deficiencies cumulatively resulted in the denial of a meaningful appeal. This contention fails because the post-conviction court did not err in rejecting each of the individual claimed deficiencies.

We conclude therefore that the evidence does not lead unmistakably and unerringly to the conclusion that the defendant received ineffective assistance of appellate counsel on his direct appeal.

### c. Public Defender System

The defendant challenges the post-conviction court's denial of his claim that systemic defects existed in the Marion County public defender system that rendered trial and appellate counsel ineffective. He asserts that the public defenders could not have adequately represented defendants because the judges hired public defenders for their own courts, the hiring was done by political affiliation, and the system was seriously deprived of trained staff and resources. Citing *United States v. Cronic*, 466 U.S. 648, 659–660, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668 (1984), the defendant contends that "[the] manifested defects [were] so fundamental and pervasive that a presumption of ineffective assistance should attach," Brief of Petitioner–Appellant at 104, and that "the likelihood of effective assistance was so small as to justify a presumption of prejudice," Brief of Petitioner–Appellant at 111.

The post-conviction court found that the defendant failed to show "that systemic defects in the Marion County Superior Court public defender system rendered his trial and appellate counsel ineffective." P.C.R. Record at 322. The post-conviction court specifically concluded that political considerations did not hamper or constrain trial counsel, that trial counsel received funds to hire an investigator and a psychological expert, and that no evidence demonstrated that trial counsel failed to pursue any aspect of the defense because of pressure or lack of funds from the trial court. The post-conviction court also concluded that "there were not systemic defects in the Marion County Public Defender system in 1988 which would have

rendered trial counsel or appellate counsel ineffective." P.C.R. Record at 325.

*Cronic* established, in effect, a narrow exception to the two-pronged *Strickland* test, which requires defendants to demonstrate specific errors of counsel leading to deficient performance and actual prejudice in order to obtain reversal on ineffective assistance of counsel grounds. In *Cronic*, the U.S. Supreme Court rejected a claim of ineffective assistance of counsel but did suggest that, in limited circumstances of extreme magnitude, "a presumption of ineffectiveness" may be justified and that such circumstances are, in and of themselves, "sufficient [to establish a claim of ineffective assistance] without inquiry into counsel's actual performance at trial." *Cronic*, 466 U.S. at 662, 104 S.Ct. at 2048, 80 L.Ed.2d at 670. If the *Cronic* exception does not apply, the defendant must fulfill the individualized requirements of *Strickland*. See *id.* at 659 n. 26, 104 S.Ct. at 2047 n. 26, 80 L.Ed.2d at 668 n. 26.

 The *Cronic* Court identified three situations that would justify this presumption: (1) when counsel is completely denied; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) when surrounding circumstances are such that, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659–60, 104 S.Ct. at 2047, 80 L.Ed.2d at 668. The *Cronic* Court further explained that "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Id.* at 662, 104 S.Ct. at 2048, 80 L.Ed.2d at 670. Justice Powell explained that, under the circumstances described in the third situation, "the defendant is in effect deprived of counsel altogether, and thereby deprived of any meaningful opportunity to subject the State's evidence to adversarial testing." *Kimmelman v. Morrison*, 477 U.S. 365, 395 n. 2, 106 S.Ct. 2574, 2593–94 n. 2, 91 L.Ed.2d

305, 332–33 n. 2 (1986) (Powell, J., concurring). Recently, we reiterated that, with regard to this third situation, the " 'burden under *Cronic* is extremely heavy.' " *Coleman*, 703 N.E.2d at 1039 (quoting *Games v. State*, 684 N.E.2d 466, 481 (Ind.1997)). *See also Coleman*, 703 N.E.2d at 1039 (stating that "such a presumption is justified only in cases involving circumstances of similar character and magnitude as those cited as examples in *Cronic* ").

■ In this case, the defendant argues that the third *Cronic* situation applies. The defendant presented the testimony of several lawyers or experts acquainted with the system as it existed at the time of the defendant's trial. On cross-examination, the prosecutor asked Bob Hill, a public defender who tried capital cases roughly contemporaneous with the defendant's trial, if "indigent clients in Marion County did not receive effective assistance of counsel in any circumstances because of the nature of the agency." P.C.R. Record at 1012. Hill replied, "No. I don't think you can phrase that statement in the absolute.... I think these defects resulted in *some* people not receiving adequate representation." P.C.R. Record at 1012–13 (emphasis added). Robert Spangenberg, an expert for the defendant who has conducted studies of court systems throughout the nation and who testified that a strong presumption existed that lawyers would be ineffective, admitted that he did not know of a single lawyer being fired for political reasons. Spangenberg also testified that investigative and expert resources were often not available in non-capital cases but that this testimony does not apply to capital cases. He also stated that, in death penalty cases, the public defenders could receive resources in the way of information and training from the Indiana Public Defender's office. Additionally, trial and appellate counsel for the defendant testified that they did not feel that a lack of funding and resources or conflicts of interest inhibited their representation of the defendant.

We have discussed and rejected similar claims that systemic defects in the county indigent defense systems, including that of Marion County, create a presumption of prejudice and ineffective assistance. *See, e.g., Coleman*, 703 N.E.2d at 1036–41 (Lake County's system); *Brown v. State*, 698 N.E.2d 1132, 1145 (Ind.1998) (Lake County's system); *Johnson v. State*, 693 N.E.2d 941, 952–53 (Ind.1998) (Madison County's system); *Roche v. State*, 690 N.E.2d 1115, 1135 (Ind.1997) (Lake County's system); *Games*, 684 N.E.2d at 478–81 (Marion County's system).

While this Court recognizes the less than ideal conditions in the Marion County public defender system in the 1980s and appreciates the necessity of competent defense for indigent defendants, theoretical imperfections alone will not satisfy the extremely heavy *Cronic* burden and force us to find a *Cronic* exception to the *Strickland* analysis and to reverse the defendant's conviction. We conclude that the evidence is not without conflict and, as a whole, does not lead unerringly and unmistakably to a decision opposite the post-conviction court's finding that the defendant failed to establish a *Cronic* claim. The post-conviction court did not err in concluding that the defendant failed to establish his claim that systemic defects in the Marion County public defender system made it impossible for counsel properly to represent the defendant and rendered the defendant's counsel ineffective.

### 6. Mental Health Evaluations

The defendant contends that the post-conviction court erred in rejecting his claim that his convictions and death sentences are unreliable and fundamentally erroneous, violating various constitutional provisions, because they are based in part on inadequate mental health evaluations. The defendant argues that the court-appointed experts only conducted testing for the limited purpose of determining competency and sanity, and that, because of the absence of a competent mental health evaluation, the defense "was unable to determine to what extent Conner's mental health was relevant to the guilt or penalty phases of trial." Brief of Petitioner–Appellant at 132. He contends that the unreliable and incomplete evaluations prevented the development of evidence relevant to the circumstances of his admissions, the commission of the crime, and mitigating evi-

dence. The post-conviction court found that the defendant "failed to carry his burden of proof on the claim that there was impropriety in the manner in which his mental health evaluations were conducted." P.C.R. Record at 318.

■ As noted by the post-conviction court, while trial counsel's request for a mental evaluation was for the purpose of determining competency to stand trial, the order issued by the trial court requested a report from two psychiatrists indicating the soundness and unsoundness of the defendant's mind on the date of the alleged offense. The trial court appointed two psychiatrists to examine the defendant and provided funds for the defense to hire its own psychiatric expert to assist in the development of potential defenses. The defendant was evaluated before the trial by Ronald H. Hull, M.D.; Dwight W. Schuster, M.D.; Paul Frederickson, Ph. D.; and the defense's own expert, Joseph King, M.D.

In the post-conviction proceedings, the defendant presented evidence from David Price, Ph.D., an expert routinely employed "to critique and evaluate the evaluations of psychiatrists and psychologists." Brief of Petitioner–Appellant at 128. Dr. Price found fault with Dr. Frederickson's psychological testing and diagnosis, with Dr. King's diagnosis, and with the limited scope of the evaluations of Dr. Hull and Dr. Schuster. The defendant asserts that Dr. Price provided the post-conviction court with his opinion that the defendant potentially suffered from thirty-one mental health diagnoses.

As observed by the U.S. Supreme Court, "[p]sychiatry is not, however, an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, on cure and treatment, and on likelihood of future dan-

gerousness." *Ake v. Oklahoma,* 470 U.S. 68, 81, 105 S.Ct. 1087, 1095, 84 L.Ed.2d 53, 64–65 (1985). Likewise, we have noted that "[p]sychiatry is an extremely uncertain field dealing with the mysteries of the human mind where expert opinions can be expected to and do differ widely." *Harrison v. State,* 644 N.E.2d 1243, 1253 (Ind.1995).

■ We recognize that a defendant may be entitled to the assistance of psychiatric expertise. The Supreme Court in *Ake* addressed a claim[9] that Ake was denied the means of presenting psychiatric evidence to rebut the State's evidence of his future dangerousness, an aggravating factor under the Oklahoma capital sentencing scheme. Focusing upon "the probable value that the assistance of a psychiatrist will have" and "the risk attendant on its absence," *Id.,* 470 U.S. at 84, 105 S.Ct. at 1096, 84 L.Ed.2d at 66, the Court held:

> [W]here the consequence of error is so great, the relevance of responsive psychiatric testimony so evident, and the burden on the State so slim, due process requires access to a psychiatric examination on relevant issues, to the testimony of the psychiatrist, and to assistance in preparation at the sentencing phase.

*Id.,* 470 U.S. at 84, 105 S.Ct. at 1097, 84 L.Ed.2d at 67.[10]

In the present case, the defendant was provided with extensive access to psychiatric assistance and testimony for his use at trial. Notwithstanding the ability of his post-conviction counsel subsequently to locate and present expert opinion disagreeing with the psychological and psychiatric evidence at trial, we decline to find constitutional infirmity, and we reject the defendant's claim that his convictions and death sentence are unreliable and fundamentally erroneous. He was not

**9.** The principal issue addressed in *Ake,* and with which the opinion commenced, is "whether the Constitution requires that an indigent defendant have access to the psychiatric examination and assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question." *Id.,* 470 U.S. at 70, 105 S.Ct. at 1090, 84 L.Ed.2d at 58. We have also addressed this issue in cases in which the defendant's sanity

was at issue. *See, e.g., Scott v. State,* 593 N.E.2d 198, 199–201 (Ind.1992); *Palmer v. State,* 486 N.E.2d 477, 481–82 (Ind.1985).

**10.** *Accord Tuggle v. Netherland,* 516 U.S. 10, 12, 116 S.Ct. 283, 284, 133 L.Ed.2d 251, 254–55 (1995); *Simmons v. South Carolina,* 512 U.S. 154, 165, 114 S.Ct. 2187, 2194, 129 L.Ed.2d 133, 143 (1994). *Cf. Castor v. State,* 587 N.E.2d 1281, 1288–89 (Ind.1992).

denied due process of law. The post-conviction court did not err in denying his claim on this issue.

### 7. Constitutionality of Indiana's Death Penalty Statute

■■■ The defendant raises eleven separate challenges to the constitutionality of our statutorily-created death penalty system. We find each of these claims to be procedurally forfeited because they were available but not raised on direct appeal and because they do not constitute fundamental error. In fact, this Court has previously considered and rejected almost all of these claims in other cases.[11]

### 8. Exclusion of Evidence at the Post-Conviction Hearing

■■■ The defendant contends that the post-conviction court erred in excluding as hearsay certain material and relevant evidence. At the post-conviction hearing, the post-conviction court excluded the affidavits of two experts who conducted psychological evaluations on the defendant, Dr. Dwight Schuster, a court-appointed psychiatrist who examined the defendant for competency and sanity, and Dr. Joseph P. King, the expert psychiatrist retained by the defense; the affidavits of two witnesses, Butheyl Ray Miller and Marcella Wolfe, who recounted various parts of the defendant's background and events relating to the night of the crimes, although neither witnessed the actual killings; and the prior testimony of Norman Lefstein, Dean and Professor of Law at the Indiana University School of Law—Indianapolis, from a previous case in which he testified concerning systemic defects in the Marion County public defender system. The defendant claims that the court's exclusion of

---

11. *See Roche,* 690 N.E.2d at 1128 (statutory terms and phrases in general use and understandable by person of ordinary intelligence need not be expressly defined); *Harrison v. State,* 644 N.E.2d 1243, 1259–60 & n. 28 (Ind.1995) (statutory language does not require jury unanimity on mitigating circumstance before it can be weighed against aggravating circumstance, statute not unconstitutional for failure to require written jury findings, statute not unconstitutional for failure expressly to place on State the burden of proving that aggravating circumstances outweigh mitigating circumstances); *Bivins v. State,* 642 N.E.2d 928, 946–49 (Ind.1994) (statute need not require aggravators outweigh mitigators beyond a reasonable doubt, statute not unconstitutional for failure expressly to permit jury to recommend against death penalty despite presence of aggravators outweighing mitigators, statutory mitigator naming absence of significant prior criminal history is valid, statutory language does not impermissibly limit consideration of mental or emotional disturbance and impairment as relevant mitigating circumstances, statute not unconstitutional for failure to specify expressly that jury can consider mitigating circumstances not unanimously found, statutory procedure affords constitutionally adequate appellate review); *Burris v. State,* 642 N.E.2d 961, 968 (Ind.1994), *cert. denied,* 516 U.S. 922, 116 S.Ct. 319, 133 L.Ed.2d 221 (1995) (statute does not create mandatory death sentence); *Lowery,* 640 N.E.2d at 1045 (standard rules of appellate review allow for the requisite meaningful appellate review, death penalty statutory process ensures the death penalty is not arbitrarily or disproportionately imposed); *Miller v. State,* 623 N.E.2d 403, 409–10 (Ind.1993) (statute not unconstitutional for failure to require sentencer to find aggravating circumstances outweighed mitigating circum-

stances beyond a reasonable doubt, statute not unconstitutional for failure expressly to permit jury to recommend against death penalty despite presence of aggravators outweighing mitigators, statute does not mandate jury to recommend death penalty, statute adequately provides for jury consideration of mitigating circumstances); *Woods v. State,* 547 N.E.2d 772, 794 (Ind.1989), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991) (statutory authorization for guilt phase evidence to be considered during penalty phase not unconstitutional); *Wisehart v. State,* 484 N.E.2d 949, 958 (Ind.1985) (statutory procedures adequately meet the federal requirements to guard against arbitrary and capricious or freakish application of death penalty); *Burris v. State,* 465 N.E.2d 171–72, 190 (Ind.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809 (1985) (statute valid despite failure to require written jury findings); *Daniels v. State,* 453 N.E.2d 160, 171 (Ind.1983) (statute need not require aggravators outweigh mitigators beyond a reasonable doubt). Furthermore, we find that the defendant's contention that the statute impermissibly makes the consideration of mitigating factors optional presents no error, fundamental or otherwise. By providing that "[t]he mitigating circumstances that may be considered" include the listed mitigators and "[a]ny other circumstances appropriate for consideration," IND CODE § 35–50–2–9(c) (1988), our statute clearly satisfies the requirement that the sentencer be "free to give 'independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation.....'" *Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1, 8 (1982) (quoting *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973, 990 (1978)).

the evidence was erroneous because, "under the circumstances of his capital case, the exclusion of evidence denied him a full and fair post-conviction hearing." Brief of Petitioner–Appellant at 140. Relying on *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (per curiam), the defendant argues that the evidence presented in the affidavits was so material and relevant that excluding it under the hearsay rule deprived the defendant of due process.

In *Green*, the U.S. Supreme Court reversed a state court's exclusion of evidence under the state's hearsay rule in a capital sentencing hearing. *Id.* at 97, 99 S.Ct. at 2151–52, 60 L.Ed.2d at 741. The excluded testimony originated from a codefendant's confession and related directly to the degree of participation of both defendants in the crimes. In the Court's opinion, the trial court had excluded "highly relevant," sufficiently reliable testimony from a witness whom the state had used in its prosecution of Green's codefendant, but whose testimony the state objected to in Green's sentencing hearing. The Court determined that, even though the evidence may have been properly excluded under the state's hearsay rule, the evidence "was highly relevant to a critical issue in the punishment phase of the trial" and that the state court, in excluding the evidence, violated due process and deprived the defendant of his right to a fair trial. *Id.* The Court specifically stated that its decision was limited "under the facts of this case" and "[i]n these unique circumstances." *Id.* at 97, 99 S.Ct. at 2151, 60 L.Ed.2d at 741. Furthermore, the Court did not hold that all hearsay evidence had to be admitted in capital sentencing determinations.

Unlike *Green*, the exclusion at issue in this case occurred during post-conviction proceedings, not during the critical punishment phase of the trial. Furthermore, the exclusion of the proffered evidence did not deprive the defendant of an opportunity fairly to present his case. Already before the post-conviction court was evidence of the defendant's family history, mental history, problems with alcohol, and circumstances surrounding the crime. The testimony of Dr. David Richard Price and several psychiatric reports were already in evidence and provided adequate psychological evaluation. Attorneys Robert Spangenberg and Robert Hill had already testified regarding the state of affairs in the Marion County public defender system. The excluded evidence was cumulative in nature.

■ The Indiana Rules of Procedure for Post–Conviction Remedies provide in relevant part that "[t]he court may receive affidavits, depositions, oral testimony, or other evidence." P–C.R. 1(5). Because the admission or exclusion of evidence is within the trial court's sound discretion, a reviewing court defers to the trial court and will not disturb its ruling on review unless the trial court abused its discretion. *Roche*, 690 N.E.2d at 1134. Under the facts of this case, we decline to find that the post-conviction court abused its discretion in excluding this evidence.

### 9. The Effect of Accumulated Errors on Due Process

■ The defendant contends that the post-conviction court erred in denying him relief when, even though no single error may require reversal, the accumulation of errors throughout this case constitutes fundamental error and renders the defendant's convictions and death sentences unreliable. The defendant argues that, because of the accumulation of errors and the unreliability of the convictions and sentences, his due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 12 of the Indiana Constitution were violated, and reversal is required. The post-conviction court rejected this claim:

> [N]o errors of fundamental magnitude occurred during [the defendant's] trial or appeal. There has not been sufficient showing by [the defendant] that any errors were made at [the defendant's] trial, let alone errors that rise to a level that would have changed the outcome or lead to a reasonable probability that the result of the proceeding would have been different.

P.C.R. Record at 325. We agree. The post-conviction court did not err on this issue.

### 10. Propriety of the Death Sentence

■ The defendant claims that the post-conviction court erred in rejecting his claim

that the trial court used an invalid aggravator to impose the death penalty, failed to enter a proper sentencing order, and improperly failed to consider certain mitigators. The post-conviction court noted that, on direct appeal, this Court had previously reviewed and affirmed the trial court's findings and death penalty decision, and it further found that no additional evidence presented in the post-conviction proceedings indicated that the trial court's findings or judgment were erroneous or inadequate.

In the defendant's direct appeal, we held that, "[i]n reviewing the record of the penalty phase of the trial as well as the court's sentencing order, we hold that the trial court properly considered both aggravating and mitigating circumstances and properly imposed the death penalty in accordance with the Indiana act." *Conner,* 580 N.E.2d at 221. Finding no compelling argument presented to justify departure from our well-established rules regarding forfeiture and res judicata, we hold that the post-conviction court was correct in denying relief on this claim.

### Conclusion

We affirm the post-conviction court's denial of the defendant's petition for post-conviction relief.

SHEPARD, C.J., and SULLIVAN, SELBY and BOEHM, JJ., concur.