## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 20 2016, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jennifer M. Lukemeyer
Tyler D. Helmond
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kurt Hinkle,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 20, 2016<br><br>Court of Appeals Case No.<br>12A02-1508-PC-1040<br><br>Appeal from the Clinton Superior Court<br><br>The Honorable Justin H. Hunter, Judge<br><br>Trial Court Cause No.<br>12D01-1305-PC-415 |

**Pyle, Judge.**

# Statement of the Case

Kurt Hinkle ("Hinkle") appeals from the post-conviction court's denial of his petition for post-conviction relief, in which he alleged, in relevant part, that he had received ineffective assistance of appellate counsel. Hinkle argues that the post-conviction court erred by denying his claim that his appellate counsel had rendered ineffective assistance when counsel failed to file a reply brief and failed to file a transfer petition or specifically inform him of the time period for filing a transfer petition. Concluding that Hinkle has failed to meet his burden of showing that the post-conviction court erred by denying relief on these allegations of ineffective assistance of appellate counsel, we affirm the post-conviction court's judgment.

We affirm.

# Issue

> Whether the post-conviction court erred by denying post-conviction relief on Hinkle's claim of ineffective assistance of appellate counsel.

# Facts

The facts of Hinkle's crimes were set forth in the memorandum decision from his direct appeal as follows:

> K.G. was born [i]n . . . 1992. Hinkle was born [i]n . . . 1963. K.G. was fifteen years old during the summer of 2008, and was working her first job detasseling corn. Each morning, a bus would pick K.G. and her co-workers up at the convenience store where Hinkle worked. K.G. became familiar with Hinkle when

she purchased chocolate donuts from the convenience store each morning while waiting for the bus. At some point, Hinkle, who was running for Clinton County Surveyor, gave K.G. a campaign button and asked K.G. to work on his campaign. K.G. agreed and soon after began attending campaign functions with Hinkle and his wife.

One day in late July or early August of 2008, K.G. went to the home Hinkle shared with his wife following a campaign event. While at the home, Hinkle took K.G. on a tour of the property. Hinkle led K.G. into a shed, grabbed K.G., and kissed her, putting his tongue in K.G.'s mouth. Hinkle then took K.G.'s shorts and underwear off, turned her around, and placed his penis in K.G.'s vagina. K.G. "didn't know what to think" so she "just kind of . . . went along with it." Tr. pp. 108-09. Hinkle stopped before completion.

Later that evening, Hinkle drove K.G. home following another campaign event. While driving along a "narrow country road in the middle of nowhere," Hinkle suddenly stopped the vehicle. Tr. p. 116. Hinkle instructed K.G. to come over to the driver's seat, "laid [her] down across the passenger seat," and took her pants and underwear off. Tr. p. 116. Hinkle then engaged in sexual intercourse with K.G. Hinkle continued to engage in sexual intercourse with K.G. throughout the late summer and early fall of 2008. During this time, Hinkle and K.G. engaged in sexual intercourse "two or three times a week." Tr. p. 119. K.G. testified that she engaged in sexual conduct with Hinkle "[c]ause he was nice to me." Tr. p. 119.

On August 10, 2010, the State charged Hinkle with two counts of Class B felony sexual misconduct with a minor. December 7, 2011, Hinkle filed a Motion in Limine concerning evidence of certain other alleged misconduct by Hinkle, *i.e.,* evidence of a continuing relationship between Hinkle and K.G. after K.G. turned sixteen. On December 19, 2011, the State requested, and was subsequently granted, permission to amend the charging

information to include Count III, Class D felony performance before a minor that is harmful to minors. Hinkle subsequently filed a motion to sever Count III from the first two counts as well as multiple motions to dismiss Count III. Following a hearing, the trial court denied each of Hinkle's pending motions. The State subsequently moved to dismiss Count III.

Following a two-day trial on February 28 and 29, 2012, the jury found Hinkle guilty of both counts of Class B felony sexual misconduct with a minor. On March 12, 2012, the trial court sentenced Hinkle to an aggregate eleven-year sentence, with nine of the eleven years executed in the Department of Correction and the remaining two years suspended to probation . . . .

*Hinkle v. State*, No. 12A05-1204-CR-199, *1-2 (Ind. Ct. App. Nov. 15, 2012) (footnotes omitted).

[4] Thereafter, Hinkle appealed his convictions and argued that "the trial court abused its discretion in admitting evidence at trial of his continuing relationship with K.G. after she turned sixteen, in violation of Indiana Evidence Rule 404(b)." *Id.*, slip op. at *2. Specifically, Hinkle's appellate counsel[1] argued that the evidence was inadmissible under Indiana Evidence Rule 404(b). Hinkle contended that the trial court had committed "reversible error" by admitting the evidence and that the admission resulted in a "fundamentally unfair trial." (Hinkle's Ex. 3 – Appellant's Br. at 1, 8, 9). In the State's brief, it argued that the trial court did not abuse its discretion by admitting the evidence.

---

[1] Hinkle's appellate counsel was F. Scott Stuard.

Additionally, the State argued that admission of evidence was harmless error and that the "evidence about Hinkle's relationship with K.G. after she turned sixteen was used by both the State and the defense – by the defense to support a theory of acknowledging that sexual activity occurred but disputing its timing." (Hinkle's Ex. 3 – Appellee's Br. at 5). Hinkle's appellate counsel did not file an Appellant's Reply Brief.

[5] When addressing Hinkle's Rule 404(b) challenge to the admission of evidence, another panel of our Court explained that "'[o]ur analysis of admissibility under Rule 404(b) necessarily incorporates the relevancy test of [Indiana Evidence] Rule 401 and the balancing test of [Indiana Evidence] Rule 403.'" *Hinkle*, No. 12A05-1204-CR-199, slip op. at *2 (quoting *Sanders v. State,* 704 N.E.2d 119, 123 (Ind. 1999)) (brackets added by *Hinkle* Court). Our Court noted the State's arguments that the evidence was admitted merely to "show the ongoing nature of Hinkle and K.G.'s relationship" and that it was relevant to show that their relationship was not one of an "innocent friend" but was instead "characterized by Hinkle's sexual interest in K.G." *Id.* at *3 (internal citations omitted). After we recognized the fact that the trial court had given a limiting instruction and had "instructed the jury that the evidence was admitted for the sole purpose of showing the relationship between Hinkle and K.G.[,]" we addressed Hinkle's admission of evidence issue as follows:

> Without deciding whether the evidence of Hinkle and K.G.'s continuing relationship was relevant under Rule 401, we conclude that the admission of the evidence was, at most, harmless. Again, "the improper admission of evidence is

harmless error when the defendant's conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Ware* [*v. State*], 816 N.E.2d [1167] at 1175 (Ind. Ct. App. 2004) (citing *Hernandez* [*v. State*], 785 N.E.2d [294] at 300 [(Ind. Ct. App. 2003), *trans. denied*]). The record here demonstrates that Hinkle's convictions are indeed supported by substantial independent evidence of guilt.

K.G. provided unequivocal testimony regarding her sexual encounters with Hinkle during the late-summer and early-fall of 2008, including sexual intercourse in a shed on Hinkle's property and in Hinkle's car along a country road. These sexual encounters occurred when K.G. was fifteen years old. K.G. further testified that after the above-mentioned sexual encounters but prior to her sixteenth birthday, she and Hinkle engaged in sexual intercourse two or three times a week. Upon review, we are satisfied that, in light of K.G.'s unequivocal testimony regarding her sexual encounters with Hinkle which occurred before she turned sixteen, there is no substantial likelihood that the evidence of Hinkle's relationship with K.G. after she reached the age of sixteen contributed to Hinkle's conviction. As such, the admission of the challenged evidence, to the extent improper, was harmless. *See Ware,* 816 N.E.2d at 1175.

*Id.*

[6] On November 15, 2012, the same day that our Court issued the memorandum decision in Hinkle's appeal, Hinkle's appellate counsel sent Hinkle a letter along with a copy of our Court's memorandum decision. Hinkle's appellate counsel informed him that "[u]nfortunately the Court ha[d] affirmed the trial court's decision." (Hinkle's Ex. 4). The letter also instructed Hinkle of the following:

If you wish to pursue this further, you may petition the Indiana Supreme Court to have this matter transferred to them for further consideration. Please let me know if you wish to do this so that I can inform the Court.

If you have any questions, please contact my office.

(Hinkle's Ex. 4).

[7] Subsequently, on February 8, 2013, Hinkle's appellate counsel sent Hinkle another letter, which provided, in relevant part:

> I recently received a letter from you dated January 22nd. However, this is the first correspondence which I have received from you regarding pursuing your case further. Normally, the standard process for contesting a denial of an appeal is to petition the Court to have that decision transferred to the Supreme Court. However, you only have thirty days from the date the decision is reached to pursue that route. Therefore, the time has passed for you to request a transfer to the Supreme Court and you cannot challenge the decision through that means.

(Hinkle's Ex. 5).

[8] On April 10, 2013, Hinkle filed a pro se petition for post-conviction relief. Thereafter, Hinkle obtained counsel and filed an amended post-conviction petition. In Hinkle's amended petition, he alleged, in relevant part, that he was denied the effective assistance of appellate counsel. Specifically, Hinkle alleged that his appellate counsel had rendered ineffective assistance by: (1) failing to file a reply brief to address harmless error; and (2) failing to file a petition for transfer or notify him of the deadline to file a petition to transfer, which, he argued, resulted in a complete denial of counsel that should be considered

under the standard set out in *U.S. v. Cronic*, 466 U.S. 648 (1984), rather than under the *Strickland* standard.[2]

[9] On February 10, 2015, the post-conviction court held a hearing on Hinkle's petition. Hinkle did not call his appellate counsel as a witness. Instead, he testified on his own behalf, and he called Joel Schumm ("Schumm"), an attorney and law professor, as a witness. Additionally, Hinkle introduced the following as exhibits: the trial transcript; the two appellate briefs; this Court's memorandum decision; the November 2012 and February 2013 letters he had received from his appellate attorney; Schumm's curriculum vitae; and a chapter from an appellate practice manual authored by Schumm.[3]

[10] During the hearing, Hinkle acknowledged that, on November 15, 2012, his appellate attorney sent him a copy of this Court's memorandum decision affirming his conviction and a letter notifying him that he could file a petition to transfer. Hinkle testified that, on December 4, 2012, he wrote his appellate attorney a letter and requested that he file a transfer petition. Hinkle did not introduce a copy of this letter into evidence. Hinkle also testified that he sent

---

[2] Hinkle also alleged that his appellate counsel rendered ineffective assistance by failing to raise a sentencing argument. He does not argue this claim on appeal.

[3] The chapter was entitled "After the Appellate Opinion is Issued" and was part of the Appellate Practice Manual that Schumm wrote for the Indiana Public Defender Council.

his attorney another letter on January 22, 2013 to check on the status of the appeal. He did not introduce a copy of that letter into evidence.[4]

[11] Upon Hinkle's request, the trial court recognized Schumm as an "expert" witness "on matters of appellate procedure and substantive appellate law . . . within the State of Indiana." (Tr. 35). Schumm opined that Hinkle's appellate counsel's failure to file a reply brief, failure to file a transfer petition, and failure to communicate the specific transfer procedure to Hinkle constituted deficient performance.

[12] In regard to Hinkle's claim that his appellate counsel had rendered ineffective assistance by failing to file a reply brief, Schumm testified that he generally advises his students to file a reply brief "in almost every case." (Tr. 38). Schumm testified that Hinkle's appellate counsel should have filed a reply brief to respond to the State's harmless error argument because counsel had not pre-emptively addressed it in his opening brief. Schumm testified that appellate counsel's failure to file a reply brief addressing the harmless error argument was "almost an implicit concession" of the argument. (Tr. 39). On cross-examination, Schumm acknowledged that Hinkle's appellate counsel had argued Hinkle had been denied a fair trial by the admission of the challenged evidence, but he opined that he still should have filed a reply brief to respond to

---

[4] At the end of the post-conviction hearing, upon a question posed by the trial court to the attorneys, the parties explained that appellate counsel's file had been stored in another attorney's office and had been shredded by that office's staff.

the harmless error argument because, based on his "time um clerking at the Court of Appeals and talking to people there[,]" the failure to file a reply brief to respond to the argument would be taken as "sort of a passive assumption that it must be because there's nothing to say on that issue." (Tr. 63).

[13] Schumm also testified that appellate counsel's November 2012 letter notifying Hinkle of the option of filing a petition to transfer was "inadequate" because it did not set forth the specific deadline and procedure for filing such a petition. (Tr. 40). Additionally, Schumm testified that appellate counsel's failure to file a petition to transfer was "not much different than not having a lawyer at all." (Tr. 42). He suggested that such failure could be considered as a denial of representation at a critical stage under *U.S. v. Cronic*, which would mean that Hinkle would not need to show prejudice. Schumm testified how he, personally, handles the process for filing a transfer petition. He opined that Hinkle's admission of 404(b) evidence raised on direct appeal was a "good issue" that could have been raised in a transfer petition, and he testified that he would have filed a transfer petition. (Tr. 42). Schumm also testified that a petition to transfer could have been based on the Court of Appeals' lack of analysis on the admission of evidence issue, opining that "the Court of Appeals could have more explicitly said it's an error as opposed to they're not gonna address or they're gonna assume it's an error." (Tr. 50).

[14] The post-conviction court took the matter under advisement and, later, issued an order denying Hinkle's petition for post-conviction relief on all claims of ineffective assistance of appellate counsel. The post-conviction court rejected

Hinkle's argument that his claims should be reviewed under the *Cronic* standard instead of the *Strickland* standard. The post-conviction court also found that Hinkle had failed to show that his appellate counsel's performance was deficient and had failed to show prejudice. Hinkle then filed a motion to correct error, which the trial court denied. Hinkle now appeals.

# Decision

[15]     Hinkle appeals the post-conviction court's order denying post-conviction relief on his claims of ineffective assistance of appellate counsel. Our standard of review in post-conviction proceedings is well settled.

> We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal case citations omitted), *trans. denied.* Additionally, "[w]e will not reweigh the evidence or judge the credibility of the witnesses; we examine only the

probative evidence and reasonable inferences that support the decision of the post-conviction court." *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007), *reh'g denied*, *cert. denied*.

[16] Hinkle argues that the post-conviction court erred by denying post-conviction relief on his claim of ineffective assistance of appellate counsel. Specifically, Hinkle contends that his appellate counsel rendered ineffective assistance when counsel: (1) failed to file a reply brief; and (2) failed to file a transfer petition or inform him of the deadline for filing a transfer petition.

[17] We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. *Williams v. State*, 724 N.E.2d 1070, 1078 (Ind. 2000), *reh'g denied*, *cert. denied*. A claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984), *reh'g denied*), *reh'g denied*, *cert. denied*. "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012) (citing *French v. State*, 778

N.E.2d 816, 824 (Ind. 2002)), *trans. denied.* However, "[i]f we can easily dismiss an ineffective assistance claim based upon the prejudice prong, we may do so without addressing whether counsel's performance was deficient." *Baer v. State*, 942 N.E.2d 80, 91 (Ind. 2011), *reh'g denied.* "Indeed, most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone." *French*, 778 N.E.2d at 824.[5]

[18] In order to succeed on an ineffective assistance of counsel claim, "a petitioner must overcome the 'strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Greene*, 16 N.E.3d 416, 419 (Ind. 2014) (quoting *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *reh'g denied, cert. denied*). "A defendant alleging the ineffective assistance of appellate counsel on direct appeal bears a rigorous burden." *Conner v. State*, 711 N.E.2d 1238, 1252 (Ind. 1999), *reh'g denied, cert. denied.* "Because the decision regarding what issues to raise and what arguments to make is 'one of the most important strategic decisions to be made by appellate counsel,' ineffectiveness is very

---

[5] When discussing the prejudice prong, the State seems to suggest that Hinkle was also required to show that his convictions were "fundamentally unfair or unreliable." (State's Br. 19). In Hinkle's Reply Brief, he also discusses fundamental unfairness as if it is a requirement in addition to prejudice. Our Indiana Supreme Court, however, has clarified that "whether the result of the proceeding was fundamentally fair, is not a discrete third prong of the IAC analysis . . . Rather, it enters into the determination of whether the likelihood of a different outcome qualifies as prejudice in the Strickland sense." *Coleman v. State*, 741 N.E.2d 697, 699 (Ind. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 391-92 (2000)), *reh'g denied, cert. denied.*

rarely found." *Id.* (quoting *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997), *reh'g denied*, *cert. denied*).

[19] Ineffective assistance of appellate counsel claims "'generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well.'" *Garrett v. State*, 992 N.E.2d 710, 724 (Ind. 2013) (quoting *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006)). Hinkle asserts that his ineffective assistance of appellate counsel claims are based upon categories (1) and (2). Specifically, he contends that his appellate counsel's failure to file a reply brief responding to the State's harmless error argument constituted the waiver of an issue and that his counsel's failure to file a transfer petition and inform him of the transfer-filing deadline constituted the denial of access to an appeal. The State, on the other hand, contends that Hinkle's claim regarding counsel's failure to file a reply brief should be reviewed as a category (3) claim (failure to present issues well) and that Hinkle's arguments regarding transfer should be reviewed as category (2) claims (waiver of issues).

[20] We, however, conclude that, in this specific instance, all of Hinkle's arguments regarding the filing of a reply brief and transfer would more properly be framed as whether appellate counsel failed to present the evidentiary issue well.[6]

---

[6] Contrary to Hinkle's contention, his appellate counsel did not waive an issue. Harmless error was not an appellate issue to be raised by appellate counsel. Hinkle's counsel raised an evidentiary issue on appeal. Any response to the State's harmless error argument would have been addressing the evidentiary issue already raised. Thus, his counsel's lack of response to the State's harmless error argument would be more appropriately considered a failure to present that evidentiary issue well.

"[C]laims of inadequate presentation of certain issues, as contrasted with the denial of access to an appeal or waiver of issues, are the most difficult for defendants to advance and for reviewing tribunals to support." *Hollowell v. State*, 19 N.E.3d 263, 270 (Ind. 2014) (citing *Bieghler*, 690 N.E.2d at 195). "[T]his is so because such claims essentially require the reviewing court to reexamine and take another look at specific issues it has already adjudicated to determine 'whether the new record citations, case references, or *arguments* would have had any marginal effect on their previous decision.'" *Id.* (quoting *Bieghler*, 690 N.E.2d at 195)) (emphasis added by *Hollowell* Court).

[21] We need not, however, decide whether appellate counsel's performance was deficient because Hinkle has not shown prejudice on any of his ineffective assistance of appellate counsel claims. *See Young v. State*, 746 N.E.2d 920, 927 (Ind. 2001) (explaining that it was not necessary to address the allegations of deficient performance where the petitioner had failed to establish prejudice and affirming the trial court's denial of post-conviction relief; *Coleman*, 741 N.E.2d at 701 n.4 (quoting *Strickland,* 466 U.S. at 697) (explaining that "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed'").

---

Additionally, appellate counsel's failure to file a transfer petition or inform Hinkle of the specific time limits for filing transfer was not a denial of access to an appeal. Hinkle's appellate counsel perfected an appeal, filed an appellate brief, and obtained an appellate opinion. Because a transfer petition is a means to seek our Indiana Supreme Court's review of an argument previously raised in an appeal to our Court, Hinkle arguments regarding transfer would be more appropriately considered a failure to present that evidentiary issue well.

To succeed on his ineffective appellate counsel claim, "the prejudice-prong of *Strickland* require[d] [Hinkle] to demonstrate a reasonable probability that, but for his counsel's errors, the result of his direct appeal would have been different." *See Martin v. State*, 760 N.E.2d 597, 600 (Ind. 2002) (citing *Strickland*, 466 U.S. at 694). Thus, to show prejudice on his ineffective appellate counsel claim regarding the lack of a reply brief, Hinkle was required to show that but for his appellate counsel's failure to file a reply brief discussing harmless error, this Court would have reversed the trial court's ruling on the evidentiary issue and reversed his conviction. Additionally, to show prejudice on his ineffective appellate counsel claim regarding the lack of a transfer petition, Hinkle was required to show that but for his appellate counsel's failure to file a transfer petition or specifically inform him of the transfer timelines, the Indiana Supreme Court would have granted transfer, reversed the trial court's ruling on the evidentiary issue, and reversed his conviction.[7]

---

[7] Hinkle contends that, instead of applying the *Strickland* analysis, we should review his ineffective appellate counsel claims pursuant to *Cronic* and presume prejudice. "*Cronic* established, in effect, a narrow exception to the two-pronged *Strickland* test[.]" *Conner*, 711 N.E.2d at 1254. "In *Cronic*, the U.S. Supreme Court rejected a claim of ineffective assistance of counsel but did suggest that, in limited circumstances of extreme magnitude, 'a presumption of ineffectiveness' may be justified and that such circumstances are, in and of themselves, 'sufficient [to establish a claim of ineffective assistance] without inquiry into counsel's actual performance at trial.'" *Id.* (quoting *Cronic*, 466 U.S. at 662) (brackets added by *Conner* Court).

> *Cronic* delineates three circumstances that avoid the *Strickland* requirement that a defendant establish both deficient performance and actual prejudice: (1) the complete denial of counsel; (2) a complete failure by counsel to subject the State's case to meaningful adversarial testing; and (3) the circumstances of the trial are such that, although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

[23] Hinkle, however, has not shown that there is a reasonable probability that the result of his direct appeal would have been different had his appellate counsel filed a reply brief or a transfer petition. Essentially, Hinkle's argument regarding prejudice on his ineffective assistance of appellate counsel claims boils down to a mere assertion that he was prejudiced by counsel's failure to file a reply brief and transfer petition. *See* (Hinkle's Br. 9) (arguing that appellate counsel's failure to file a reply brief "prejudiced Hinkle"); (Hinkle's Br. 15, 16) (contending that he was prejudiced because the "remedy" of seeking transfer was "lost"). He attempts to support his assertion of prejudice by relying on the "uncontroverted testimony" of Schumm. (Hinkle's Reply Br. 7). In other words, Hinkle contends that the post-conviction court should have determined that he was prejudiced by counsel's actions because Schumm testified that Hinkle's actions constituted deficient performance.

[24] We acknowledge that the trial court recognized Schumm as an "expert" on "matters of appellate procedure and substantive appellate law . . . within the

---

*Harrison v. State*, 707 N.E.2d 767, 774 (Ind. 1999) (internal quotations and citations omitted), *reh'g denied*, *cert. denied*.

Hinkle contends that he was not required to show prejudice because, in accordance with *Cronic*, his appellate counsel's actions effectively equated to a complete denial of counsel. The post-conviction court rejected this argument, as do we. Aside from Hinkle's reliance on Schumm's testimony that his appellate counsel's representation was "'not much different than not having a lawyer at all[,]'" (Hinkle's Br. 14) (quoting Tr. 42), he has not shown how he was completely denied counsel by his appellate counsel who perfected an appeal, filed an appellate brief, and obtained an appellate opinion. Accordingly, the *Cronic* presumption of prejudice does not apply, and Hinkle is required to meet his burden of showing prejudice under *Strickland*. *See Conner*, 711 N.E.2d at 659 n.26 ("If the *Cronic* exception does not apply, the defendant must fulfill the individualized requirements of *Strickland*.").

State of Indiana." (Tr. 35). Under Evidence Rule 702(a), a witness who is "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." However, "[t]he post-conviction court is the sole judge of the evidence and the credibility of the witnesses[,]" *Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006), and it was up to the post-conviction court to determine whether Schumm's testimony helped it in its determination of the ineffective assistance of appellate counsel issue.

[25] The trial court made the following findings and conclusions, which indicate that it did not place great weight upon Schumm's testimony regarding Hinkle's ineffective appellate counsel claims:

> 31. Professor Schumm testified that [appellate counsel] should "absolutely" have filed a reply brief.
>
> 32. Pursuant to Appellate Rule 63 (G) filing of reply briefs is discretionary.
>
> 33. [Appellate counsel] did not address harmless error in the opening brief and the State argued in its brief that the admission of the contested evidence was harmless.
>
> 34. Professor Schumm testified that in his experience, the Indiana Court of Appeals will "base its decision on the briefs. And if there's nothing from one side then the argument from the other side is very likely to prevail." (Tr. 39).
>
> 35. Appellate courts are "not limited in [their] review of issues to the facts and cases cited and arguments raised by the appellant's

counsel. [The Court of Appeals] commonly review[s] relevant portions of the record, perform[s] separate legal research, and often decide[s] cases based on legal arguments and reasoning not advanced by either party." *Bieghler v. State*, 690 N.E.2d 188, 193 ([Ind.] 1997).

* * * * *

46. Hinkle relied on the testimony of Professor Schumm for the proposition that prejudice accrued to Hinkle through the lack of a rebuttal argument on the issue of harmless error. This presumes that, in the face of argument by the State on this issue, the appellate court had no choice but to accept the State's position.

47. The discussion in *Bieghler* makes clear that appellate courts are not confined to the four corners of the briefs in making their decisions. "While impressive appellate advocacy can influence the decisions appellate judges make and does make our task easier, a less than top notch performance does not necessarily prevent us from appreciating the full measure of an appellant's claim." ([*Bieghler*, 690 N.E.2d at]195). The harmless error argument is one which is frequently encountered by our appellate courts and is precisely the type of claim which would enjoy the court's enhanced scrutiny beyond the briefs. Clearly, in Hinkle's review such was the case as the opinion states that the "record here demonstrates that Hinkle's convictions are indeed supported by substantial evidence of guilt." (Op. p.6)[.]

(App. 14-16).

[26] The post-conviction court ultimately determined that Hinkle had failed to meet his burden of showing deficient performance and resulting prejudice. The knowledge of determining the effectiveness of appellate counsel was within the post-conviction court's realm of knowledge, and we will not find error in the post-conviction court's conclusion merely because Hinkle's witness testified

otherwise. *See Stephenson*, 864 N.E.2d at 1028 ("We will not reweigh the evidence or judge the credibility of the witnesses; we examine only the probative evidence and reasonable inferences that support the decision of the post-conviction court.").[8]

[27] Because Hinkle has failed to show prejudice in regard to his ineffective assistance of appellate counsel claims, he has failed to meet his burden of showing that the post-conviction court erred by denying relief on these claims. Accordingly, we affirm the post-conviction court's denial of post-conviction relief.

[28] Affirmed.

Baker, J., and Bradford, J., concur.

---

[8] We also note that, pursuant to Indiana Evidence Rule 704(b), a witness "may not testify to opinions concerning . . . legal conclusions." *See also Hoglund v. State*, 962 N.E.2d 1230, 1234 n.3 (Ind. 2012) (noting that "there is authority for the proposition that Rule 704(b) was designed to preserve existing Indiana law by providing that witnesses may not testify to certain specific subjects") (citing 13 Robert Lowell Miller, Jr., Indiana Practice Series, Indiana Evidence § 704.201 at 589 (3d ed. 2007)), *reh'g denied*.